STATE OF MISSOURI EX REL. JENNIE MINCKE, EMILY RUNGE, BEAUFORD MILLER, MILDRED CALHOUN, AND HERBERT F. ROESSEL, DEPUTY PROBATION OFFICERS OF THE ST. LOUIS JUVENILE COURT, RELATORS, v. HON. EUGENE J. SARTORIUS, RESPONDENT.—95 S. W. (2d) 873.

St. Louis Court of Appeals. Opinion filed July 10, 1936.

Opinion Modified; Motion for Rehearing Overruled July 14, 1936.

*Donnell & McDonald* for relators.

808

*Jacob M. Lashly* for respondent.

PER CURIAM:—This is an original proceeding in prohibition. The relators are Jennie Mincke, Emily Runge, Beauford Miller, Mildred Calhoun, and Herbert F. Roessel, who for several years past have served as Deputy Probation Officers of the Juvenile Court of the City of St. Louis. The respondent is the Honorable Eugene J. Sartorius, one of the duly elected and acting judges of the Circuit Court of the City of St. Louis, and presently assigned to preside in the Juvenile Division thereof. The purpose of the proceeding is to have respondent prohibited from the enforcement of an order heretofore entered by him on May 16, 1936, but made to become effective on May 30, 1936, dismissing and discharging relators as deputy probation officers without having filed charges against them and without having granted them an opportunity for a hearing.

Relators have alleged in their petition that in undertaking to order and bring about their dismissal without charges preferred and a hearing thereon, respondent has acted in contravention of Section 14144, Revised Statutes 1929 (Mo. St. Ann., sec. 14144, p. 861), which, in connection with Section 14145, provides for the appointment of probation officers and their deputies; and that in so purporting to act, respondent has exceeded and abused his rightful power and jurisdiction so as to warrant this court in prohibiting him from any further action in the premises.

Particularly have relators alleged in their petition that respondent's predecessors in office have uniformly construed Section 14144 to mean that no deputy probation officer could be discharged from his office without having been advised of the ground on which his discharge was based, and without having been afforded an opportunity for a hearing on the charge made against him.

Because of such allegation of fact on the part of relators, and in view of the distinct public interest which naturally attends the matter at issue, this court in its discretion ordered its preliminary writ of prohibition to issue. A return thereto was duly made by respondent; issue was joined under the pleadings; and the case is now here for our decision upon the question of respondent's power and jurisdiction to carry out the order of dismissal heretofore made and entered by him as aforesaid.

Turning to Sections 14144 and 14145 of the current revision of the statutes, we find the pertinent law with reference to the appointment of probation officers and their deputies to be as follows:

"Sec. 14144. Appointment of probation officer—duties.—The circuit court of the criminal court where constituted as a juvenile court under this article shall appoint a discreet person of good character, not under the age of twenty-five years, to serve as probation officer during the pleasure of the court. . . . In counties·now or hereafter containing five hundred thousand inhabitants or more, the probation officer and persons in charge of places of detention shall be appointed on the basis of merit, after competitive examination had in pursuance of rules made a matter of record of the circuit court."

"Sec. 14145. Deputies may be appointed.—The judge of the juvenile court shall have the authority to appoint one or more deputy probation officers, to serve as probation officers during the pleasure of the court. . . ."

The present law was enacted by the Legislature in 1911 (Laws 1911, p. 177), when the then existing law relating to the creation of juvenile courts (Arts. VI and VII, Chap. 35, Revised Statutes 1909) was expressly repealed and the new law enacted. However, so far as concerns the specific question of the appointment of probation officers and their deputies, the only material change effected by the new law was the inclusion of the concluding provision of what is now Section 14144, providing for the appointment, in counties of five hundred thousand inhabitants and over, of probation officers and deputy probation officers on the basis of merit, after competitive examination had in pursuance of rules made a matter of record of the circuit court.

In a general way relators' theory of the case is that in their capacity of deputy probation officers they are properly to be denominated "public officers" or "county officers," so that the matter of their removal from office is to be governed by the provisions of Sections 11202, 11203, Revised Statutes 1929 (Mo. St. Ann., secs. 11202, 11203, pp. 6143, 6144), which have to do generally with the subject of the removal of county, city, town, and township officers for dereliction of or willful refusal to perform public duty,

and which provide for the filing of charges with the clerk of the court having jurisdiction over the offense charged, and for a hearing upon the same.

We think that relators clearly misconceive the applicability of such statutes to their case. Conceding that because of the functions they serve within restricted territorial limits they are to be classed both as "public officers" and as "county officers" within the meaning of the law (Hasting v. Jasper County, 314 Mo. 144, 282 S. W. 700), yet it does not follow that the matter of their removal from office is necessarily to be governed by Sections 11202 and 11203. This for the reason that those sections of the statutes are purely general in their nature, and have to do with the subject of the removal from office of the several classes of officers specified therein serving terms of office which are definitely defined by law. Consequently, because of the fact that such statutes are merely general in their scope, and are intended to deal with the removal of officers elected or appointed for definitely prescribed terms, they can have no application to a situation where there is a special or particular statute which deals with the removal of a particular officer whose tenure of office is indefinite and is to be measured by the pleasure of the appointing power. [State ex rel. v. Morehead, 256 Mo. 683, 691, 165 S. W. 746.]

In such a situation, that is, where the officer holds his office merely "at the pleasure" of the appointing power, the law is well settled that he may be removed from his office without formal charges of misconduct in office and without a hearing. In other words, in determining the right of the superintending authority to order their removal, the courts make a very clear cut and obvious distinction between officers appointed for definitely prescribed terms, and those whose tenure of office is limited only by the pleasure of the appointing power. Where the appointment is for a definite term, the appointment logically confers on the officer the right to serve out his full official period unless forfeited by his own misconduct, since the very fact of the definiteness of the official tenure necessarily negatives any idea of a reservation of power and authority on the part of the appointing power to remove the officer at will. On the other hand, where the law conferring the authority under which the appointment is made is silent as to any limitation upon the right of removal, and the duration of the official term is thus left unlimited except by the will and pleasure of the appointing power, then under such circumstances the unqualified power of removal is an incident to the very power of appointment itself, which may be invoked and applied at pleasure without notice, the making of charges, or a hearing thereon. [State ex inf. v. Hedrick, 294 Mo. 21, 241 S. W. 402; State ex rel. v. The City of St. Louis, 90 Mo. 19, 1 S. W. 757;

Horstman v. Adamson, 101 Mo. App. 119, 74 S. W. 398; 46 C. J. 989; 22 R. C. L., sec. 287, p. 576.]

Now it is expressly provided by Section 14145 that deputy probation officers shall be appointed to serve "during the pleasure of the court," in consequence of which respondent's right to order the removal of relators without the preferment of charges or an opportunity afforded them for a hearing is clearly given to him, unless it be that there is some other provision of the law which serves to affect the status of deputy probation officers so as to remove them from the general category of those officers whose tenure of office is to be determined by the will of the appointing power.

Relators argue that such is indeed the situation in so far as their own particular status is concerned. They call attention to the fact that in the enactment of the present law in 1911 the Legislature saw fit to provide that in counties containing five hundred thousand inhabitants or more, probation officers and their deputies shall be appointed on the basis of merit, after competitive examination (Sec. 14144, supra), and they seek to have us infer a legislative intent from such provision that if the appointment is to be made on the basis of merit, or on the basis of the principles of civil service, then by analogy it must necessarily follow that the removal of such officers cannot be had at will, but only for cause, upon charges preferred, and a hearing held thereon.

Conceding that it was undoubtedly the wise legislative purpose in the enactment of Section 14144 to provide for the appointment of persons experienced in and peculiarly fitted for juvenile court work, yet it does not follow that in so providing as to the qualifications of those appointed the Legislature intended to or did set at naught its positive and explicit language in the same statute relating to the indefinite tenure in office of those so appointed. Appointment to office is one thing, and the removal of those appointed is quite another; and even though the law relating to the appointment of probation officers and their deputies does set up standards of civil service by which those about to be appointed are to be measured, it does not in anywise deny the subsequent power of removal which follows as incident to the appointing power when the tenure of office is left to be determined by the pleasure of that power. To the contrary, we must accept and give effect to the statute exactly as it is written; and in so doing we must have full regard for the fact that while the Legislature, with a view to public interest, did provide for the appointment of probation officers and their deputies on the basis of merit, it also provided that the tenure of their offices should be merely "during the pleasure of the court," which leaves it to the court, as we have heretofore pointed out, to terminate such tenure at its own will, being answerable only to its

own judicial conscience and the approval of its constituency. [Morvan v. Nunn, 84 Fed. 551; People v. Schannell, 62 App. Div. 249, 70 N. Y. S. 983; People v. Henry, 47 App. Div. 133, 62 N. Y. S. 102.]

Nor, despite relators' charge in their petition to the contrary, have the judges of the Circuit Court of the City of St. Louis heretofore construed the law otherwise than as it is being construed herein.

Insofar as the appointment of the present relators is concerned, it appears from the official records of the Court, which have been brought to us as a part of respondent's return, that the several relators herein were appointed to hold office either during the pleasure of the court, or until removed by an order of the judge presiding in the Juvenile Division, or without any definite period of service or length of term being specified in the particular record entry evidencing the appointment. In other words, the records show that the court at all times has clearly recognized the fact that the tenure of office of its appointees as deputy probation officers was to be indefinite, just as the statute itself prescribes, and subject to the will of the judges assigned to the Juvenile Division.

But more significant still upon the question of the attitude of respondent's predecessors in office as to the matter now in issue is the fact that on two occasions at least the circuit court in general term had before it the specific question of the right of a deputy probation officer to have a hearing upon the matter of his discharge, and in each instance took the unequivocal position that the matter was one reposing entirely in the discretion of the judge assigned to the Juvenile Division.

The official records show that at a meeting of the general term on April 26, 1919, at which were present Judges Charles B. Davis, J. Hugo Grimm, Granville Hogan, Wilson A. Taylor, Vital W. Garesche, John W. Calhoun, Karl Kimmel, Frank Landwehr, Victor H. Falkenhainer, and Robert W. Hall, there was presented the question of the right of one Lou R. Essex to have a hearing upon the matter of her discharge as deputy probation officer. The action taken by the court on that occasion is evidenced by the following record entry:

"In the Matter            )
        of                )
"Mrs. Lou R. Essex.       )
"Deputy Probation Officer. )

"It is ordered by the Court, that the letter of Mrs. Lou R. Essex, Deputy Probation Officer, requesting a hearing on the matter of her discharge as such Probation Officer, be, and the same is hereby ordered filed, and that the Presiding Judge of this Court, be, and is hereby requested to notify said Lou R. Essex, Deputy Probation Officer, that the matter of her dismissal is in the entire discretion of the Presiding Judge of the Juvenile Court."

Again, on June 21, 1919, at a meeting of the general term, attended by Judges Charles B. Davis, George H. Shields, Franklin Ferris, J. Hugo Grimm, Benjamin J. Klene, Vital W. Garesche, John W. Calhoun, Frank Landwehr, Robert W. Hall, Moses Hartmann, Granville Hogan, and Karl Kimmel, the question of the discharge of Mrs. Essex came up for the court's attention, and again the court ruled in conformity with its previous ruling, as is evidenced by the following record entry;

"In the Matter )
     of )
"Mrs. Lou R. Essex. )

"It is ordered by the Court that the matter of Mrs. Lou R. Essex presented by the Honorable John W. Calhoun, Judge, presiding in the Juvenile Court, is not a matter coming under the rules providing for certification of a question of law to the General Term, and that the matter be referred to the discretion of the said Judge of the Juvenile Court."

It will thus be seen from the foregoing official records of the circuit court in general term that the allegations in relators' petition herein that "respondent's predecessors in office have uniformly construed said Section 14144, Revised Statutes 1929, to mean that no deputy probation officer could be discharged from his office without having been advised of the ground on which his discharge is based and without having been afforded an opportunity for a hearing on the charge against him" are not supported by the record before us. On the contrary, it affirmatively appears that on the two occasions when the subject was brought before them for their consideration, the judges who comprised the Circuit Court of the City of St. Louis, of whose number the then judge of the Juvenile Court was one, specifically held, and so advised such judge, that the matter of the discharge of deputy probation officers was one reposing entirely in the discretion of the judge assigned to that court.

With the matter thus committed to the discretion of the judge of the Juvenile Court, the precise course that any one or more of respondent's predecessors in office may have elected to follow in effecting the discharge of a particular deputy probation officer is not in anywise determinative of the legal question now at issue. Relators assert that hearings have in fact been heretofore held where the discharge of deputy probation officers was contemplated, but even though this may be true, such fact does not aid relators in their contention that such procedure must necessarily be followed in this instance. This for the reason that any hearing heretofore afforded a deputy probation officer upon the question of his discharge was obviously accorded him as a matter of grace and indulgence and not as a matter of right under the statute, and the fact that a par-

ticular deputy probation officer may have received such a hearing prior to his discharge does not mean that his discharge could not have been just as effectively and legally brought about by the judge of the Juvenile Court without the formality of a hearing.

Under the clear and unequivocal language of the statute in question, which provides that the judge of the Juvenile Court shall have authority to appoint one or more deputy probation officers to serve as such "during the pleasure of the court," we hold that respondent has not been guilty of unlawful or unwarranted usurpation of power and jurisdiction as charged by relators in their petition herein.

It follows that the preliminary writ of prohibition heretofore issued should be quashed, and it is so ordered.